UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

DANIEL F. CASH,                                    CASE NO. 2:20-CV-14305-KMM

       Plaintiff,

v.

WILLIAM D. SNYDER, et al.,

       Defendants.

_____/

**DEFENDANTS SNYDER AND FENTON'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT AND SUPPORTING MEMORANDUM OF LAW**

The Defendants, WILLIAM D. SNYDER, sued both in his individual capacity and in his official capacity as Sheriff of Martin County, Florida, and MICHAEL FENTON, through undersigned counsel, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, files this Motion to Dismiss Plaintiff's Amended Complaint, and in support thereof would state as follows:

**INTRODUCTION AND BACKGROUND**

On September 1, 2020, Plaintiff filed his initial complaint in this matter asserting claims against Martin County Sheriff William Snyder, Deputy Michael Fenton, and Martin County. (ECF No. 1). Plaintiff's claims were based on Plaintiff's allegations that the Sheriff's Office's investigation into prostitution related criminal activity violated certain Constitutionally protected rights of the Plaintiff.

On September 30, 2020, Defendants Snyder and Fenton filed their Motion to Dismiss arguing, *inter alia*, that Plaintiff's complaint was an improper shotgun pleading justifying its dismissal.

On October 19, 2020, Plaintiff filed his Amended Complaint asserting both federal and state law claims against Defendants Snyder and Fenton again related to the Sheriff's Office investigation regarding prostitution activity. (ECF No. 24). Attached to the Plaintiff's Amended Complaint are the affidavit submitted by Deputy Fenton in support of the search warrant application (ECF No. 24, pgs. 38-66) and the Order permitting the installation of electronic surveillance equipment which the Plaintiff alleges violated the Plaintiff's Constitutionally protected rights.

For the reasons set forth below, Plaintiff's Amended Complaint and the exhibits attached thereto, establish that, at a minimum, the Defendants are entitled to qualified immunity as a matter of law as to Counts I and III of the Amended Complaint. Further, in the absence of a widespread pattern of unconstitutional actions preceding the investigation at issue, Plaintiff's Monell claim fails as a matter of law. Finally, Counts IV and V, where the Plaintiff seeks damages for an alleged violation of the Florida Constitution are due to be dismissed since the Plaintiff cannot recover money damages for an alleged violation of Florida's Constitution.

## MEMORANDUM OF LAW

### I. STANDARD OF REVIEW

To survive a motion to dismiss, a complaint must state a claim for relief which is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). By way of a general proposition, a trial court, when considering a motion to dismiss, must accept all well pled allegations of the Complaint as being true. However, this does not apply to legal conclusions. Ashcroft v. Iqbal, 129

S.Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, does not suffice." Id. A "formulaic recitation of the elements of a cause of action" will not pass 12(b)(6) muster. Twombly, 550 U.S. at 555. Moreover, "conclusory allegations, unwarranted deductions of fact or legal conclusions masquerading as facts will not prevent dismissal." Oxford Asset Mgmt. Ltd. v. Jaharis, 297 F.3d 1182, 1188 (11th Cir. 2002).

A district court considering a motion to dismiss shall begin by identifying conclusory allegations that are not entitled to an assumption of truth--legal conclusions must be supported by factual allegations. The district court should assume, on a case-by-case basis, that well pleaded factual allegations are true, and then determine whether they plausibly give rise to an entitlement for relief. Randall v. Scott, 610 F.3d 701, 709-10 (11th Cir. 2010).

In evaluating a motion to dismiss, a court may look to the exhibits attached to the Complaint. See Solis-Ramirez v. US. Dept. of Justice, 758 F.2d 1426, 1430 (11th Cir. 2009). Indeed, it is the law in this Circuit that "when the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." Crenshaw v. Lister. Lister, 556 F.3d 1283, 1292 (11th Cir. 2009) (quoting Griffin Industries, Inc. v. Irvin, 496 F.3d 1189, 1206 (11th Cir. 2007))([W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern."); Simmons v. Peavy-Welsh Lumber Co., 113 F.2d 812, 813 (5th Cir. 1940) ("Where there is a conflict between the allegations in a pleading and exhibits thereto, it is well settled that the exhibits control.").

II.     **ARGUMENT**

A.      **The Defendants are entitled to qualified immunity as to Counts I & III of the Amended Complaint.**

In Counts I and III of the Amended Complaint, Plaintiff alleges generally that the Defendants' actions violated his clearly established right to bodily privacy. As an initial matter, Plaintiff supports these claims with general and conclusory allegations which the Plaintiff seems to suggest invalidate the warrant which permitted the Defendants to install the surveillance equipment. Plaintiff's conclusory allegations which the Plaintiff suggests invalidate the warrant itself, conflict with the exhibits to the Amended Complaint.  The Exhibits to the Complaint demonstrate the reasonableness of the investigation itself including the decision to seek judicial permission for electronic surveillance. Separate and apart from the legality of the warrant itself, Plaintiff also asserts alternative theories as the basis for his § 1983 claims. These theories of relief have never been clearly established by binding precedent by the United States Supreme Court, the Eleventh Circuit, or the Florida Supreme Court. Thus, at a minimum, the Defendants are entitled to qualified immunity. Each of the Plaintiff's theories will be addressed below.

### a. The Prostitution Investigation

As noted above, Plaintiff's Amended Complaint asserts in general terms that Defendant Fenton "intentionally, recklessly, and maliciously overstated the factual basis of his investigation, as well as falsely claiming the need for use of hidden cameras." (ECF No. 24, pg. 5, ¶ 30). Plaintiff's Amended Complaint further asserts that a number of alleged falsehoods in the warrant, (Id. at ¶ 30), apparently operate to invalidate the order permitting electronic surveillance of the massage parlor. (Id. at 33).

The Defendants respectfully submit that the Plaintiff's conclusory allegation that Deputy Fenton overstated the factual basis of his investigation are contradicted by the exhibit to the Amended Complaint consisting of the warrant application which demonstrates the totality of the investigation justifying the Order permitting electronic surveillance of the massage parlor.

As the warrant affidavit recounts, the investigation at issue was initiated after Defendant Fenton received a tip from Karen Herzog, an inspector for the Health Department. (Id. at pg. 42). Ms. Herzog became concerned after observing clothing, suitcases, food, bedding and other indicators that someone was living the massage parlor. (Id.). Subsequent investigation revealed a number of suspicious factors

4

suggesting that the massage parlor was being utilized for prostitution related activities including that the business was listed on an internet site dedicated to advertising those types of businesses (Id. at pages 47-52).

Next, Deputy Fenton conducted visual surveillance of the outside of the establishment where Deputy Fenton observed **only** males entering the establishment. (Id. at pg. 54). Additionally, during surveillance of the outside of the massage parlor, Deputy Fenton observed suspicious behavior of the men entering the massage parlor including the fact that many of the men looked around the parking lot before entering the spa as well as the fact that many of the male clientele would park a significant distance from the spa which caused Deputy Fenton to believe that the men were attempting to avoid being associated with spa. (Id.).

As part of the investigation, Defendant Fenton removed trash from a dumpster behind the spa. (Id. at 56). Included in the trash which was removed from the dumpster behind the business were napkins and tissues containing a liquid substance which tested positive for semen. (Id. at 56). Additionally, prior to seeking the warrant, Deputy Fenton conducted traffic stops of two men who had recently partaken in the services offered at the spa. (Id. at pgs. 59-60). Those men confirmed to Deputy Fenton that they had received a sexual act in exchange for $40.00. (Id. at 60).

As Deputy Fenton testified to in his warrant, the totality of the circumstances led Defendant Fenton to believe that the spa was being utilized to engage in prostitution. (Id. at 61). Further, despite Plaintiff's conclusory assertion to the contrary, Defendant Fenton specifically addressed the alternatives to electronic surveillance and the reasons why the alternatives were inadequate to the purpose of the investigation. (Id. at 62). Defendant Fenton further informed the reviewing magistrate that surveillance cameras would only be installed in locations of the spa where criminal activities were believed to occur (Id. at pg 64).

The Defendants respectfully submit that warrant affidavit attached to the Plaintiff's Amended Complaint demonstrates that the warrant issued permitting Deputy Fenton to install cameras to monitor the criminal activities engaged in within the spa was supported by probable cause. It is within that context that

Plaintiff's "right to privacy" claims must be evaluated to determine whether the Defendants are entitled to qualified immunity.

      **b.**    **Statement of Law Regarding Qualified Immunity.**

In order for Plaintiff to recover against the Defendants in their individual capacities, Plaintiff must demonstrate that the Defendants violated Plaintiff's constitutional rights and are not entitled to qualified immunity. The qualified immunity defense protects governmental officials from suit in their individual capacities for acts based on the use of their discretion. See Harlow v. Fitzgerald, 457 U.S. 800, 815 (1982). Qualified immunity affords broad protection to "all but the plainly incompetent or those who knowingly violate the law." See Malley v. Briggs, 475 U.S. 335, 341 (1986); Hutton v. Strickland, 919 F.2d 1531, 1537 (11th Cir. 1990); Tillman v. Coley, 886 F.2d 317 (11th Cir. 1989).

The Supreme Court of the United States has indicated that:

> Such officials as police officers or prison wardens, to say nothing of higher level officials who enjoy only qualified immunity routinely make close decisions in the exercise of the broad authority that necessarily is delegated to them. These officials are subject to a plethora of rules, often so voluminous, ambiguous, and contradictory, and in such flux that officials can comply with them only selectively . . . . In these circumstances, officials should not err always on the side of caution.

Davis v. Scherer, 468 U.S. 183, 196 (1986).

In Harlow, supra, the United States Supreme Court applied an objective test regarding government officials performing discretionary duties, and specifically noted:

> Government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.

This objective test clearly gives trial courts greater flexibility in disposing of claims on summary judgment.  See Harlow, supra, at 818.

Qualified immunity presents a question of law for the court regardless of which stage of the proceedings, if a determination must be made.  See Dartland v. Metropolitan Dade County, 866 F.2d 1321 (11th Cir. 1989).  The burden of proof on the defense of qualified immunity is allocated as follows:

First, it is the obligation of the defendant who claims that his or her action is qualifiedly immune to demonstrate that his or her actions were taken within the scope of his or her discretionary authority.  A governmental official acts within his/her discretionary authority if he/she was "(a) performing a job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize." Hollomon ex rel. Holloman v. Harland, 370 F.3d 1252, 1265 (11th Cir. 2004) Here there is no reasonable dispute that Sheriff Snyder and Deputy Fenton were acting within their discretionary authority during the events which form the basis of this lawsuit. When the initial burden of the defendant public official has been met, it is then incumbent upon the plaintiff to demonstrate that the defendant public official acted in bad faith, i.e. "violated clearly established constitutional law." See Brosseau v. Haugen, 543 U.S. 194 (2004). The United States Supreme Court has recently reiterated the fact that: "'Clearly established law' should not be defined at a high level of generality...the clearly established law must be particularized to the facts of the case." See White v. Pauly, 137 S.Ct. 548, 552 (internal citations omitted).[1]

---

[1] This court is authorized to resolve the qualified immunity question first and is no longer required to first determine whether an actual constitutional violation occurred. See Pearson v. Callahan, 555 U.S. 223 (2009).

Furthermore, the resolution of the qualified immunity issue in the Eleventh Circuit is controlled by the state of the law as found in the opinions issued by the following courts: the United States Supreme Court, the Eleventh Circuit Court of Appeals, and the Florida Supreme Court. See Vineyard v. Wilson, 311 F.3d 1340, 1351 n.22 (11th Cir. 2002). In addition, the qualified immunity analysis is dependent upon the state of the law **at the time** the officer allegedly violated the decedent's constitutional rights; in this case, October 8, 2018, which is the date that the Plaintiff alleges his right to privacy was violated. Consequently, opinions of the courts decided **after** the date of the alleged constitutional violation do not clearly establish the law as to that particular constitutional issue for the purpose of denying qualified immunity. However, such opinions are helpful in determining whether a particular defendant is entitled to qualified immunity.

> **1. The Plaintiff has no clearly established right to bodily privacy in the context of surveillance conducted pursuant to a warrant.**

In Counts I & III, Plaintiff alleges that the Defendants violated his right to bodily privacy during the investigation of the massage parlor. As an initial matter, the right to bodily privacy recognized in this Circuit relates to the rights retained by a prisoner in the context of compelled nudity. See Fortner v. Thomas, 983 F.2d 1024, 1030 (11th Cir. 1993). The Fortner decision, and the cases that follow it, have clearly established the principle that individuals who have been placed in police custody maintain a constitutional right to bodily privacy. Plaintiff was not in police custody when he voluntarily disrobed. Instead, Plaintiff was observed pursuant to a judicially approved warrant. It is the Plaintiff's burden to present factually similar case law which preceded the events complained of to give the Defendants fair notice that their actions violated the Plaintiff's "right to privacy" as alleged. This the Plaintiff cannot do. To the contrary, the United States

Supreme Court has explicitly held that a person at a **residence** for a short period of time for illegitimate commercial purposes lacks a reasonable expectation of privacy. See Minnesota v. Carter, 525. U.S. 83, 90-91 (1998); see also United States v. Bell, 218 F. App'x 885, 895 (11th Cir. 2007) ("In order to establish a reasonable expectation of privacy, however, the [proponent] would have to prove that he was a guest for personal reasons, not for a commercial purpose.").

As Plaintiff asserts in his Amended Complaint, the massage parlor at issue was a strictly commercial business licensed by the State of Florida which ostensibly offered spa related services including massage therapy. (ECF No. 24, Plaintiff's Amended Complaint at pg. 3, ¶ 15). In the absence of any precedent establishing the Plaintiff's right to privacy to engage in commercial activity and further that that clearly established right to privacy can be violated by a law enforcement officer relying on a judicially approved search warrant, the Defendants are entitled to qualified immunity as a matter of law.

**2.     The law is not clearly established that the Constitution requires minimization standards to be clearly defined.**

Plaintiff's Complaint also suggests that his Constitutional rights were violated based on Deputy Fenton's failure to define the minimization protocols to be utilized in the surveillance of the massage parlor. (Id. at pg. 8, ¶ 33; pg. 11, ¶ 53). In addressing the minimization issue, the Fourth District Court of Appeals noted that "there is no binding Florida statute, Florida decisional law, or rule of criminal procedure that addresses this type of surreptitious video-only surveillance as a law enforcement investigative tool." (See ECF No. 1, Plaintiff's Initial Complaint, pg 46). Likewise, there are no cases out of the Eleventh Circuit nor the United States Supreme Court providing guidance as to whether minimization protocols are required for video only surveillance monitoring. More importantly for purposes of the Plaintiff's Amended Complaint, there certainly

is not clearly established precedent outlining at what level of particularity minimization protocols must be defined.

The Defendants are entitled to qualified immunity to the extent Counts I & III are based on Defendant Fenton's failure to define or describe the minimization protocols to be employed.

**B.      Count II of the Complaint, Plaintiff's <u>Monell</u> claim, fails as a matter of law.**

It is well settled that a government entity is not liable for the actions of its subordinates or employees in a cause of action brought pursuant to 42 U.S.C. §1983 by operation of the concept of respondeat superior/vicarious liability.  Therefore, before liability can attach there must be both allegations and proof of a custom, policy, practice or procedure that provided the moving force behind, and the direct cause of, the alleged constitutional violation.  See <u>Monell v. Dept. of Social Services</u>, 436 U.S. 658 (1978) and <u>Fundiller v. City of Cooper City</u>, 777 F.2d 1436 (11th Cir. 1985).

There is a distinction between a custom, practice or procedure and an official policy.  In the case of a formal, official policy that clearly authorizes unconstitutional behavior, a single incident of the unconstitutional behavior by a subordinate of the official policy-making authority is sufficient to bring a § 1983 cause of action.  <u>See</u> <u>e.g.</u> <u>Monell</u>, <u>supra.</u>   However, the law is more stringent in its requirement of proof in the typical § 1983 case where the custom, practice or procedure is not an officially promulgated policy and rather is based upon some other theory that is not <u>directly</u> related to the actual unconstitutional act.  Generally, in a case where the "policy of the governmental entity" is argued to exist through such an informal custom or practice, a single or isolated incident of a constitutional violation by an employee is insufficient to establish such an informal custom or practice.  See <u>City of Oklahoma v. Tuttle</u>, 471 U.S. 808 (1985) and <u>Craig v. Floyd County, Ga.</u>, 643 F. 3d 1306, 1310 (11th Cir. 2011).

In <u>Bd. of County Comm'rs of Bryan County, Oklahoma v. Jill Brown</u>, 520 U.S. 397, 404-15 (1997), the United States Supreme Court declared:

> As our §1983 municipal liability jurisprudence illustrates, however, it is not enough for a §1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the moving force behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.
>
> Where a plaintiff claims that a particular municipal action itself violates federal law or directs an employee to do so, resolving these issues of fault and causation is straight-forward. Section 1983 itself contains no state-of-mind requirement independent of that necessary to state a violation of the underlying right. In any §1983 suit, however, the plaintiff must establish the state-of-mind of the underlying violation. Accordingly, proof that a municipality's legislative body or authorized decision-maker has intentionally deprived the plaintiff of a federally protected right necessarily establishes that the municipality acted culpably. Similarly, the conclusion that the action taken or directed by the municipality or its authorized decision-maker itself violates federal law will also determine that the municipal action was the moving force behind the injury of which the plaintiff complains....
>
> Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to insure that the municipality is not held liable solely for the actions of its employee....
>
> Claims not involving an allegation that the municipal action itself violated the law, or directed or authorized the deprivation of federal rights, present much more difficult problems of proof. That a plaintiff has suffered a deprivation of federal rights at the hands of a municipal employee will not alone permit an inference of municipal culpability and causation; the plaintiff will simply have shown that the employee acted culpably....
>
> Where a court fails to adhere to rigorous requirements of culpability and causation, municipal liability collapses into respondeat superior liability. As we recognized in Monell and have repeatedly

>reaffirmed, Congress did not intend municipalities to be held liable unless deliberate action attributable to the municipality directly caused a deprivation of federal rights.

(internal quotes and citations omitted.)

To establish the existence of a custom or practice that directly caused a violation of the Plaintiff's constitutional rights, it is necessary to allege and prove a persistent and wide-spread practice of the allegedly unconstitutional behavior (deputies conducting unconstitutional video surveillance investigations) that existed before the investigation at the heart of this lawsuit. Normally, random acts or isolated incidents are insufficient to establish a custom or practice. See Depew v. City of St. Mary, 787 F.2d 1496, 1499 (11th Cir. 1986); see also Brook v. Scheib, 813 F.2d 1191 (11th Cir. 1987); Brown v. City of Fort Lauderdale, 923 F.2d 1474 (11th Cir. 1991).

Plaintiff's Amended Complaint details one singular operation by members of the Sheriff's Office which the Plaintiff alleges violated his constitutionally protected rights. The Defendant Sheriff respectfully submits that the same investigation which the Plaintiff alleges violated his constitutional rights could not have provided the requisite notice to impose liability on the Sheriff as a governmental entity. Instead, the Plaintiff must demonstrate that similar instances of misconduct occurred prior to this investigation to state a claim against the Sheriff as a governmental entity. In the absence of any allegations of the kind, Plaintiff's Monell claim necessarily fails.

**C.     Counts IV and V of the Amended Complaint seeking damages for alleged violations of the Florida Constitution fail as a matter of law.**

In Counts IV and V of the Amended Complaint, Plaintiff seeks an award of damages based on the right to privacy as afforded by the Florida Constitution. Plaintiffs claims brought pursuant to the Florida Constitution fail as a matter of law since it is well settled that "no cause of action

exists for money damages for a violation of a state constitutional right." Depaola v. Town of Davie, 872 So. 2d 377, 380 (Fla. 4th DCA 2004) (citing Garcia v. Reyes, 697 So. 2d 549, 549-50 (Fla. 4th DCA 1997); Fernez v. Calabrese, 760 So. 2d 1144 (Fla. 5th DCA 2000) (rejecting a claim for the violation of Florida's Constitution). Therefore, the Defendants are entitled to dismissal of Counts IV and V of the Amended Complaint where the claims are seeking money damages for alleged violations of Florida's Constitution

## CONCLUSION

For the reasons set forth above, the Defendants respectfully request the entry of an Order dismissing Plaintiff's Amended Complaint.

**I HEREBY CERTIFY** that I have electronically filed a copy of the forgoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to: **RICHARD D. KIBBEY, ESQUIRE** and **JORDAN R. WAGNER, ESQUIRE**, Counsel for Plaintiff, 416 Camden Avenue, Stuart, Florida 34994 [kibbeylegal@gmail.com, jwagner@kebbeylaw.com, diana@kibbeylaw.com] this 2nd day of November, 2020.

*/s/ Gregory J. Jolly*
GREGORY J. JOLLY, ESQUIRE
Fla. Bar No. 118287
PURDY, JOLLY, GIUFFREDA, BARRANCO & JISA, P.A.
2455 E. Sunrise Boulevard, Suite 1216
Fort Lauderdale, Florida 33304
Telephone:   (954) 462-3200
Facsimile:    (954) 462-3861
e-mail: Greg@purdylaw.com
         Cecilia@purdylaw.com

Attorney for *Defendants Snyder and Fenton*